**David Bernard BOLES, Sara Boles and David Lamar Franklin, Plaintiffs–Appellees,**

v.

**CITY OF CHATTANOOGA, Defendant–Appellant.**

Court of Appeals of Tennessee, Eastern Section.

July 5, 1994.

Application for Permission to Appeal Denied by Supreme Court Oct. 24, 1994.

David Haines Rotroff, Chattanooga, for plaintiffs-appellees.

Randall L. Nelson, City Atty., Wm. Shelley Parker, Jr. and Phillip A. Noblett, Chattanooga, for defendant-appellant.

## OPINION

SUSANO, Judge.

This is a declaratory judgment action involving zoning issues. The Defendant City of Chattanooga appeals the Judgment of the trial court permitting the Plaintiffs to continue the "non-conforming" use of their property as the site of an "adult-oriented establishment." The Chancellor, sitting without a jury, found that the failure of the Plaintiffs to operate an adult-oriented establishment on their property for a period of approximately 22 months (from November 10, 1987, to August 30, 1989) did not constitute a discontinuance of a non-conforming use under the Chattanooga Zoning Ordinance [1] because the discontinuance was involuntary in nature.

## I

The City of Chattanooga raises two issues on this appeal:

1. If a non-conforming use of real property is discontinued for 100 consecutive days, must such discontinuance be voluntary in

---

1. Article VII, Section 100 of the Chattanooga Zoning Ordinance provides that "[t]he lawful use of a building existing at the time of the passage of this Ordinance shall not be affected by this Ordinance, although such use does not conform to the provisions of this Ordinance; and such use may be extended throughout the buildings, provided no structural alterations except those required by law or Ordinance, or ordered by an authorized officer to secure the safety of the building, are made therein; but no such use shall be extended to occupy any land outside such buildings. *If such non-conforming building is removed or the non-conforming use of such building is discontinued for 100 consecutive days, every future use of such premises shall be in conformity with the provisions of this Ordinance.*" (Emphasis Added).

nature before the right to such use is forfeited under the language of the Chattanooga Zoning Ordinance?

2. If so, was the discontinuance of the non-conforming use in this case involuntary in nature?

## II

The Plaintiffs Boles own property at 4100 Rossville Boulevard in Chattanooga. Boles and others had operated an adult book and/or video store at that location since the early 1970's. On February 1, 1977, the City of Chattanooga amended its Zoning Ordinance to add new regulations governing adult-oriented establishments. Under the amendment, the Rossville Boulevard property was no longer zoned for an adult-oriented establishment; but such a use there was permitted as a pre-existing non-conforming use under the "grandfather" provision of the Ordinance.

## III

On November 4, 1987, the Hamilton County District Attorney General filed suit against the Plaintiffs Boles and Brenda Faye Collins[2], "owner and operator of Brenda's Book and Video World," in the Hamilton County Criminal Court seeking to abate a public nuisance at the adult-oriented establishment then operated by Collins on the Boles' property. On November 10, 1987, after a show cause hearing the same day, the Criminal Court issued a temporary injunction restraining the Plaintiffs Boles and their tenant Collins from continuing the operation of the adult-oriented establishment and requiring the Hamilton County Sheriff to padlock the establishment's doors and windows. The order provided, in pertinent part, as follows:

> That the defendants, their agents and employees are restrained from continuing the opreation [sic] of Brenda's Book and Video World or removing from the premises at 4100 Rossville Boulevard, Chattanooga, Hamilton County, Tennessee, any item of personal property of any kind, or allowing any property of any kind to be removed from said premises pending the hearing on

2. Collins is not a party to the instant case.

the temporary injunction or until further orders of the Court.

> That the Sheriff of Hamilton County, Tennessee immediately go to the premises at 4100 Rossville Boulevard, Chattanooga, Hamilton County, Tennessee and padlock the doors and windows of said establishment. The Sheriff shall seize and safely keep the personal property of every kind and description now located at the said premises.

At a final hearing on March 28, 1988, the Criminal Court found that "[t]he premises at 4100 Rossville Boulevard ... upon which is located Brenda's Book and Video World has been and is a place where breaches of the peace including indecent exposure and open masturbation have occurred." The court went on to find "unsanitary conditions which pose a threat of communicable disease and a health hazard to the public." On May 3, 1988, the Criminal Court entered its final order providing, in pertinent part, as follows:

> *The Court concludes from the facts that the property at 4100 Rossville Boulevard, owned and operated by David Bernard Boles and Sara Boles and the business known as Brenda's Book and Video World located thereon has been and is a public nuisance* as defined in Tennessee Code Annotated 29–3–101 et seq.

> It is therefore ORDERED, ADJUDGED AND DECREED:

> ### I.

> *The property located at 4100 Rossville Boulevard, Hamilton County, Tennessee and the business known as Brenda's Book and Video World located thereon has been and is a public nuisance.*

> ### II.

> The temporary injunction entered on November 10, 1987, abating a public nuisance at 4100 Rossville Boulevard, Hamilton County, Tennessee be made permanent.

## III.

Respondent, Brenda Faye Collins, be perpetually enjoined from engaging in, conducting, or continuing or maintaining such nuisance, directly or indirectly, by herself or her agents or representatives, in Hamilton County, Tennessee.

## IV.

*Respondents, David Bernard Boles and Sara Boles, be perpetually enjoined and forbidden from permitting or suffering the operation of [sic] maintenance of such nuisance, directly or indirectly, by themselves or their agents or representatives or on [sic] within their said property.*

## V.

Subject to the restrictions in paragraphs III and IV the padlocks on the property at 4100 Rossville Boulevard are ordered removed. (Emphasis Added).

In the Criminal Court case, the Plaintiffs Boles and their tenant Collins appealed the final order of the trial court to this Court. During the pendency of the appeal, the parties to the appeal reached an agreement as to the constitutionally permissible scope of a permanent injunction abating the public nuisance. The appeal was dismissed by agreement of the parties, with the understanding that the parties would submit an agreed order to the Criminal Court. An agreed order was in fact entered by the Criminal Court on August 30, 1989, nunc pro tunc March 28, 1988 (the date of the final hearing in Criminal Court), which order provided, in pertinent part, as follows:

This cause is before this Court upon remand from the Court of Appeals at Knoxville, Tennessee. It appears that when this cause was before the said Appellate Court for oral argument, the parties indicated this matter might be resolved by agreement as to the language and scope of the permanent injunction issued in this cause, all parties being concerned that the scope of the permanent injunction should not be so broad as to violate either the First Amendment or the Due Process Clause of the United States Constitution, and all parties being concerned that the Final Order and Permanent Injunction should accurately reflect the basis and scope of this Court's orders issued in this cause under the nuisance statutes involved.

\*     \*     \*     \*     \*     \*

Based upon the above findings [omitted], it is:

ORDERED, ADJUDGED and DECREED that the property located at 4100 Rossville Boulevard, Hamilton County, Tennessee and the business known as Brenda's Book and Video World located thereon have been and are declared to be a public nuisance.

That the padlock heretofore placed upon the property as a result of the Temporary Injunction heretofore issued in this cause is hereby removed; however, the following permanent injunctions are issued in this cause as to the property and parties.

ORDERED, ADJUDGED and DECREED that the respondent, Brenda Faye Collins, be and hereby is perpetually enjoined from engaging in, conducting, or continuing or maintaining a public nuisance in Hamilton County, Tennessee, directly or indirectly, by herself or through her agents or representatives by operating a business which permits indecent exposure, assignation, prostitution, and/or sexual battery.

ORDERED, ADJUDGED and DECREED that the property located at 4100 Rossville Boulevard, Hamilton County, Tennessee, and the owners of said property, the respondents, David Bernard Boles and Sarah Boles, be and hereby are perpetually enjoined and forbidden from permitting or suffering the operation of [sic] maintenance of a nuisance on said property, directly or indirectly, by themselves or their agents or representatives or on or within said property by permitting said property to be utilized as a place where indecent exposure, assignation, prostitution and/or sexual battery occurs.

*Nothing in this order shall prohibit the defendants from operating a theater or bookstore or any other type of business*

*on these premises provided said operation does not violate the injunction set forth herein.* (Emphasis Added).

While the Criminal Court action was pending in the trial and appellate courts from November 10, 1987, to August 30, 1989, the adult-oriented establishment at 4100 Rossville Boulevard was closed.

In early October, 1989, the Plaintiffs Boles leased the subject premises to the Plaintiff David Lamar Franklin for the operation of an adult-oriented establishment. On or about October 9, 1989, Franklin's adult-oriented store opened for business. On October 13, 1989, a City of Chattanooga Building Inspector issued a correction notice to the business because the premises did not conform to the applicable provisions of the Zoning Ordinance. The City took the position that 4100 Rossville Boulevard was not zoned for an adult-oriented establishment and that the Plaintiffs had lost their right to this non-conforming use because they had discontinued that use for more than 100 consecutive days. This litigation followed, with the Chancellor making the findings set forth earlier in this Opinion.

## IV

The Plaintiffs assert that a non-conforming use is not discontinued within the meaning of the "grandfather" clause of the Chattanooga Zoning Ordinance unless and until the owner or occupier of the property through that person's *voluntary and affirmative* actions manifests an intention to abandon the non-conforming use. On the other hand, the City of Chattanooga argues that the word "discontinued" in the Chattanooga Zoning Ordinance means abandonment of a use, whether voluntary or involuntary. In the alternative, the City of Chattanooga argues that the Plaintiffs' discontinuance of their non-conforming use in this case was not involuntary.

## V

Our initial focus is on the meaning of the word "discontinued" as used in the Chattanooga Zoning Ordinance. Words in legislative enactments are generally given their natural and ordinary meaning. *Plough, Inc. v. Premier Pneumatics, Inc.,* 660 S.W.2d 495 (Tenn.App.1983). An ordinance should be construed so as to carry out its general purpose. *Whittemore v. Brentwood Planning Com'n, City of Brentwood,* 835 S.W.2d 11 (Tenn.App.1992). Thus the usual definition[3] of the word "discontinued" might well lead to adoption of the Defendant's view that the word does not include the element of voluntariness. Zoning ordinances, however, are subject to a different standard:

> Zoning ordinances are in derogation of the common law, and operate to deprive an owner of a use of land which might otherwise be lawful. So, in application, such laws should be strictly construed in favor of the property owner.

*State v. City of Oak Hill,* 321 S.W.2d 557, 559 (Tenn.1959). In view of this standard, the Chattanooga Zoning Ordinance must be subjected to as strict a construction as will still allow the legislation to have its intended effect. The word "discontinued" as used in a zoning ordinance is generally construed to be synonymous with the term "abandoned." Douglas Hale Gross, Annotation, *Zoning: Right to Resume Nonconforming Use of Premises After Involuntary Break in the Continuity of Nonconforming Use Caused by Governmental Activity,* 56 A.L.R.3d, 138, 151 (1974). The meaning of the word "abandoned," in the zoning context, generally includes an intention by the landowner to abandon as well as an overt act of abandonment. *Id.,* at 152. In another context, see *Cottrell v. Daniel, et al.,* 205 S.W.2d 973 (Tenn.App.1947).

There appears to be no Tennessee precedent analyzing either "discontinued" or "abandoned" in the zoning ordinance/nonconforming use context. In the leading Ten-

---

**3.** Webster's Encyclopedic Unabridged Dictionary of the English Language defines "discontinue" as "to cause to cease; put an end to; stop" (first definition). *Webster's Encyclopedic Unabridged Dictionary of the English Language* 410 (1989). Black's Law Dictionary does not define "discon-

tinue," but defines "discontinuance" as "Ending, causing to cease, ceasing to use, giving up, leaving off. Refers to the termination or abandonment of a project, structure, highway, or the like." *Black's Law Dictionary* 464–65 (6th ed. 1990).

nessee case considering the termination of a non-conforming use, this Court, speaking through its Middle Section, considered a zoning ordinance which sought to eliminate a non-conforming use (automobile salvage yard in mixed residential/commercial area) through a two-to-five year "amortization period." *Rives v. City of Clarksville,* 618 S.W.2d 502 (Tenn.App.1981). In *Rives,* this Court called for a weighing of the public benefit of terminating a non-conforming use against the private injury of losing the non-conforming use of the property, and remanded the case to the trial court for a determination as to whether the zoning ordinance was "facially reasonable," and if so, whether the ordinance was "reasonable as applied to plaintiff." *Id.,* at 510. This Court was not faced in *Rives* with construing any term similar to "discontinued" or "abandoned." That decision addresses the reasonableness of automatically terminating an *ongoing* non-conforming use.

In seeking to determine whether the word "discontinued" includes an element of voluntariness, we look to appellate court decisions of other states.

The various states are split over the meaning of "discontinued" (or derivatives) in zoning ordinances, but a clear majority of jurisdictions read in a requirement that the cessation of use be voluntary. Douglas Hale Gross, Annotation, *Zoning* at 157. The parties to this dispute each cite a plethora of cases to support their respective positions on the issue of whether "discontinued" includes an element of voluntariness. Our review of cases construing zoning ordinances *with specific time limits on discontinuance* (the Chattanooga Zoning Ordinance specifies 100 consecutive days) reveals an almost even split among the states as to whether voluntariness is an element in the concept of "discontinued." Appellate courts in at least eight states enforce zoning ordinances with specific time limits on "discontinuance" of non-conforming uses without regard to any element of intent. Those states and the statutory time periods specified by the entities are *Canada's Tavern, Inc. v. Town of Glenn Echo,* 260 Md. 206, 271 A.2d 664 (1970) (six month cessation); *State ex rel. Peterson v. Burt,* 42 Wis.2d 284, 166 N.W.2d 207 (1969) (one year discontinuance); *Anderson v. City of Paragould,* 16 Ark.App. 10, 695 S.W.2d 851 (1985) (30 day discontinuance); *Wyatt v. Board of Adjustment–Zoning, etc.,* 622 P.2d 85 (Colo.App.1980) ("vacancy" of twelve consecutive months); *Essex Leasing, Inc. v. Zoning Board of Appeals,* 9 Conn.App. 391, 518 A.2d 970 (1986) (one year from date of cessation or from effective date of applicable regulation); *City of Chicago v. Cohen,* 49 Ill.App.3d 342, 7 Ill.Dec. 174, 364 N.E.2d 335 (1977) (six month discontinuance); *Fuller v. City of New Orleans, Department of Safety and Permits,* 311 So.2d 466 (La.App.1975) (six month discontinuance); and *Franmore Realty Corp. v. LeBoeuf,* 201 Misc. 220, 104 N.Y.S.2d 247 (N.Y.Sup.Ct.1951) (one year discontinuance).

Appellate courts in at least eight states hold that "discontinuance" of a non-conforming use requires some evidence of intent, often with an overt act, even under zoning ordinances with time limitations. *See Quinnelly v. City of Prichard,* 292 Ala. 178, 291 So.2d 295 (1974) (six month discontinuance); *Ullman v. Payne,* 127 Conn. 239, 16 A.2d 286 (1940) (40 day discontinuance); *Crandon v. State,* 158 Fla. 133, 28 So.2d 159 (1946) (six month discontinuance); *Pioneer Insulation & Modernizing Corp. v. Lynn,* 331 Mass. 560, 120 N.E.2d 913 (1954) (one year discontinuance); *Bither v. Baker Rock Crushing Co.,* 249 Or. 640, 438 P.2d 988, modified on other grounds, 249 Or. 640, 440 P.2d 368 (1968) (six month discontinuance); *Coventry v. Glickman,* 429 A.2d 440 (R.I.1981) (one year discontinuance); *Smith v. Howard,* 407 S.W.2d 139 (Ky.App.1966) (one year discontinuance); and *Bogey's Emporium, Inc. v. City of White Plains,* 114 A.D.2d 363, 493 N.Y.S.2d 880 (N.Y.App.Div.1985) (six month discontinuance). The fact that case law in a few states—including Connecticut and New York—includes cases that seem to support both sides of this issue is indicative of how fact-dependent non-conforming land use cases tend to be (even as regards zoning ordinances with a time limitation in common), and we perceive no clear trend in the outcome of such cases in the various states' appellate courts.

We believe that the term "discontinued" or words of similar import, as utilized in zoning ordinances with specific time limitations, should be construed to include an element of intent, combined with some act—or failure to act—indicative of abandonment. Landowners who have enjoyed a non-conforming use on their properties, often for many years, no doubt come to rely economically on those non-conforming uses. Moreover, discontinuances of non-conforming uses can occur for a wide variety of involuntary reasons, not all of which stem from alleged violations of the law and some of which may be laudable. *See Canada's Tavern, Inc. v. Glen Echo,* 260 Md. 206, 271 A.2d 664, 671–72 (1970) (Barnes, J., dissenting). To hold that a non-conforming use can be cut off automatically by time limits on discontinuance, regardless of the reason for that discontinuance, strikes us as intrinsically unfair. Such a holding also seems contrary to the underlying concern for private property rights expressed in *Rives,* 618 S.W.2d at 508. Accordingly, we hold that the term "discontinued" as found in Article VII, Section 100 of the Chattanooga Zoning Ordinance does not apply if the discontinuance of the non-conforming use is purely involuntary in nature.

## VI

We next examine whether the Boles' discontinuance of their non-conforming use at the Rossville Boulevard property for some 22 months was voluntary or involuntary. Clearly they could not have legally used their property for an adult-oriented establishment while the temporary restraining order was in effect between November 10, 1987, and May 3, 1988. During this period of time the premises were padlocked by the injunctive order of the Hamilton County Criminal Court.

The City of Chattanooga argues that the failure to operate the adult-oriented establishment was voluntary from May 3, 1988, onward, because, according to the City, the court order of that date did not further enjoin the operation of an adult-oriented establishment. While this issue is not without some doubt, we conclude that the permanent injunction, in force from May 3, 1988, until August 30, 1989, could fairly be read to enjoin the operation of an adult-oriented establishment on the Boles' property. The order of May 3, 1988, defined the nuisance to include "the *business* known as Brenda's Book and Video World." (Emphasis Added). The order went on to enjoin the operation of *"such* nuisance." The fact that the order of May 3, 1988, also directed the removal of the padlocks, is of little help to the City in view of the language of that order enjoining *"such* nuisance," i.e., an adult-oriented establishment.

A blanket injunction against the operation of a bookstore is suspect in the face of the First Amendment right to freedom of expression. The May 3, 1988, order failed to state any *specific conduct* at the bookstore which was subject to prohibition. The First Amendment embraces not only the right to speak, to publish, and to print, but also the right to circulate, to receive, and to read. *H & L Messengers, Inc. v. City of Brentwood,* 577 S.W.2d 444 (Tenn.1979). While a municipality may control the location of retail outlets for erotic material, (see *Young v. American Mini Theaters, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976)), zoning power "must be exercised within constitutional limits." *Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 68, 101 S.Ct. 2176, 2182, 68 L.Ed.2d 671 (1981). Despite these constitutional principles, the Boles were faced with a broad injunction enjoining them from operating a bookstore. We believe that they acted reasonably in obeying the May 3, 1988, order, and waiting an additional 16 months during the pendency of their appeal until the August 30, 1989, final and agreed order narrowed the injunction to forbid only *illegal conduct* such as prostitution or sexual battery before reopening an adult-oriented establishment on the site. The fact that the parties to the Criminal Court litigation felt that it was necessary to clarify this point in their agreed order, is a strong indication that the District Attorney General, as well as the Plaintiffs Boles, believed that the injunction of May 3, 1988, was broad enough to prohibit the reopening of an adult-oriented establishment.

An individual must obey an injunction until it has been modified, set aside or otherwise declared to be illegal. *Nashville Corp. v. United Steelworkers, etc.,* 215 S.W.2d 818 (Tenn.1948); *Segelke v. Segelke,* 584 S.W.2d 211 (Tenn.App.1978). While it is certainly arguable that the order of May 3, 1988, was unconstitutionally overbroad, that order was there to be obeyed. We cannot conclude that the Plaintiffs should have been required to violate the literal language of the May 3, 1988, decree and run the risk of a finding of contempt and jail, in order to avoid the ill effects of a discontinuance under the Chattanooga Zoning Ordinance.

## VII

The Boles have never evinced any intention to abandon their non-conforming use, and their filing of an appeal after the May 3, 1988, order was an overt act on their part clearly indicating their continued interest in maintaining their non-conforming use. We do not believe the legally-compelled closing of the adult bookstore for 22 months can fairly be held against them, despite the Chattanooga Zoning Ordinance's time limitation.[4]

The Judgment of the trial court is in all things affirmed and this cause is remanded for such further proceedings as may be necessary and for collection of costs below. Costs of this appeal are adjudged against the City of Chattanooga and its surety.

GODDARD, P.J. (E.S.), and McMURRAY, J., concur.

4. We express no opinion as to whether the time period of 100 days is reasonable. See *Rives v.*

*City of Clarksville, supra.*