IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON

# WILLIE TOLES & IDA MAY TOLES v. CITY OF DYERSBURG, ET AL.

**A Direct Appeal from the Circuit Court for Dyer County**
**No. 98-243; The Honorable Lee Moore, Judge**

---

**No. W1999-01238-COA-R3-CV - Decided July 14, 2000**

---

The present appeal arises out of a zoning dispute between the plaintiff property owner and the City of Dyersburg, Tennessee. The property in question had been operated as a tavern since 1960. In 1998, the area in which the property was located was re-zoned as a residential area. At that point, the tavern became a non-conforming use. Prior to the re-zoning, the tavern's business license had expired and the beer license had also lapsed. The operator of the club applied for a beer permit but was denied based upon the fact that at the time of the re-zoning there was no business in operation on the premises. Therefore, the City determined that the premises could not be "grandfathered" into the new zoning classification. The Plaintiffs filed a Statutory Writ of Certiorari challenging the City's actions. The trial court held a trial *de novo* after which the City's actions were upheld.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

HIGHERS, J., delivered the opinion of the court, in which FARMER, J., and LILLARD, J., joined.

Martin L. Howie, Dyersburg, for Appellants

Fred Collins, Dyersburg; John M. Lannom, Dyersburg, for Appellees

### OPINION

The plaintiffs in this case appeal from the decision of the Dyer County Circuit Court, which upheld the Defendant's denial of plaintiffs' application for a beer permit. For the reasons stated herein, we affirm the trial court decision.

### I. Facts and Procedural History

The plaintiff, Willie Toles, is the owner of a piece of property located in Dyersburg, Tennessee.[1] Since 1960, the building on that property had been operated as the Avalon Club ("The

---

[1] The City of Dyersburg, the City Board, the Mayor, and the City Alderman will be collectively referred to as the Defendant.

Club"). The Club sold beer for on-premises consumption at all times prior to the events giving rise to the present appeal. Since 1989, the Club had been rented by Linda Ward. The Club was operated under a business license and beer license held by Ms. Ward. The business license expired on March 31, 1998, and Ward surrendered the beer license on July 1, 1998. During this time, the Club was located within a B-1 zone and was a permissible use of the land under that zoning plan.[2]

In April or May of 1998, Willie Toles began making improvements to the Club with the intent of renting the property to another individual to continue its operation as a tavern. In or around July of 1998, Ida Mae Toles, also a plaintiff in the case, agreed to operate the business. On July 21, 1998, Ms. Toles applied for a beer permit. On July 30, 1998, the building inspector and a member of the Dyersburg Fire Department conducted an inspection of the building. On July 31, 1998, a letter was sent to Ms. Toles advising her that certain repair work would be required before her application for a beer permit could be processed. Three re-inspections were conducted before the property was found to be in compliance with the applicable codes on October 1, 1998. On that date, Ms. Toles' application for a beer permit was signed by the necessary authorities.[3]

During the time that the application for a beer permit was pending, property owners in the area petitioned the Dyersburg Planning Commission to re-zone the area as residential.[4] On August 13, 1998, the Dyersburg Municipal-Regional Planning Commission met and considered the application to re-zone the area in which the Avalon Club was located. The Planning Commission recommended to the City Board that the property be re-zoned. The Defendant held a public hearing on September 8, 1998, and voted to re-zone the area from B-1 to R-3.[5]

On October 19, 1998, after the re-zoning had taken place, the Plaintiff's application for a beer permit was denied. The basis for the denial was that the property could not be "grandfathered" into the R-3 zone because at the time of the re-zoning, there was no operating business on the premises. The Plaintiffs then filed for a Statutory Writ of Certiorari, challenging the Defendant's actions in denying the application for a beer permit. A trial *de novo* was conducted in the Dyer County Circuit Court, and the denial was upheld. The present appeal followed.

## II. Law and Analysis

The issue in this case is whether the Plaintiff's property should have been grandfathered into the new zoning classification as a non-conforming prior use. There appears to be no doubt that,

---

[2] The B-1 classification is referred to as a "Limited Trading Services District."

[3] The signing of the application only denoted that the property was in compliance with all applicable codes.

[4] This zoning classification is referred to as R-3.

[5] The re-zoning appears to have complied with all applicable rules and regulations.

under the new zoning classification, the operation of a tavern on the property is not allowed. Additionally, there appears to be no doubt that the Plaintiffs had every intention of continuing to operate the Avalon Club as a tavern. The dispositive question is whether the lapse of the business license and beer license operated to prevent the business from being grandfathered into the new zoning classification.

It is important to note the timing of the critical events in this case. The business license held by Linda Ward expired on March 31, 1998. Ms. Ward subsequently surrendered her beer permit on July 1, 1998. Ms. Toles, the new operator of the club, applied for a beer permit on July 21, 1998. However, due to structural deficiencies in the building, her application was not approved until October 1, 1998. In the interim, on September 8, 1998, the area was formally re-zoned from B-1 to R-3.

It is clear that at the time the area was re-zoned, no valid business license existed for the property, nor was there a valid beer permit. The Defendant argues that this lack of a valid business license and beer permit means that no business was in operation. The Defendant further argues that since no business was in operation at the time of the re-zoning, there was nothing capable of being grandfathered into the new classification. The Plaintiffs, however, argue that their intent to continue operating the business, exemplified by the application for a beer permit and repair work, is sufficient. Herein lies the point of disagreement between the parties. The Plaintiffs argue that the intent to continue operating a business is sufficient to allow the property to be grandfathered, while the Defendant argues that the business must be in operation, which would include all applicable licenses and permits.

The Plaintiffs rely on the case of Boles v. City of Chattanooga, 892 S.W.2d 416 (Tenn. Ct. App. 1994), to support their position. In Boles, the owners and operators of an adult-oriented establishment sought a declaration that their use of the property was allowed under the zoning ordinance as a prior nonconforming use. The property in question had been operated as an adult book/video store since the early 1970's. Boles, 892 S.W.2d at 418. In 1977, the City of Chattanooga amended its zoning laws in such a way that the plaintiffs' property was no longer a permissible use. However, the business was allowed to continue its operations as a prior non-conforming use. In 1987, the Hamilton County District Attorney filed suit against the owners and operators of the store seeking to "abate a public nuisance." An injunction was subsequently entered which precluded the operation of the business. The business was not in operation while the Criminal Court action was pending in the trial and appellate courts. In early October, 1989, the Plaintiffs leased the subject premises to another individual for the operation of an adult-oriented establishment. On October 13, 1989, a City of Chattanooga Building Inspector issued a correction notice to the business because the premises did not conform to the applicable provisions of the Zoning Ordinance. The City took the position that the property was not zoned for an adult-oriented establishment and that the Plaintiffs had lost their right to this non-conforming use because they had discontinued that use for more than

3

100 consecutive days.[6] The Plaintiffs argued that a non-conforming use is not discontinued within the meaning of the "grandfather" clause of the Chattanooga Zoning Ordinance "unless and until the owner or occupier of the property through that person's voluntary and affirmative actions manifests an intention to abandon the non-conforming use."

In resolving the issue, the Court of Appeals focused on the meaning of the word "discontinued." The court stated that the word "should be construed to include an element of intent, combined with some act--or failure to act--indicative of abandonment." The court ultimately held "that the term 'discontinued' as found in Article VII, Section 100 of the Chattanooga Zoning Ordinance does not apply if the discontinuance of the non-conforming use is <u>purely involuntary</u> in nature." (emphasis added). Since the Plaintiffs could not have operated the business due to the injunction, the court found that the property did not lose its character as a non-conforming prior use.

We undertook the extensive review of the facts in the <u>Boles</u> case because the Plaintiffs' argument seems to rise or fall on its applicability to the present facts. In that regard, we do not believe that <u>Boles</u> has any bearing on the present case. Unlike the injunction in <u>Boles</u>, nothing prevented the operation of the Avalon Club as a tavern prior to the zoning change. After Linda Ward stopped operating the club, there was no extrinsic force which prevented the club from continuing its operations. The owner of the property had to find someone else to operate the club. That process apparently took some time. This is certainly not the concern of the Defendant. The Defendant did not prevent the club's operation during this time. After Ida Mae Toles agreed to operate the club, the structural deficiencies which were found in the club did stall the approval of the application for a beer permit. However, there has been no assertion that these deficiencies were unfounded or that the inspections were undertaken as a stall technique. The building did not conform to the applicable codes, and the application for the beer permit could not be approved until the necessary repairs were made. The timing of the repairs was totally in control of the Plaintiffs. Had the repairs been made more quickly, then, presumably, the application could have been approved prior to the re-zoning.

In short, there was nothing "involuntary" about the cessation of the operation of the Avalon Club as a tavern. We read <u>Boles</u> to support the proposition that "intent" is only important where some force outside the control of the property owner prevents the continued use of the land in a particular manner. Since no such force prevented the Plaintiffs from operating the Avalon Club as a tavern, their intent is not important and the <u>Boles</u> decision is thus distinguishable from the present case. Therefore, since the building was not being operated as a business at the time of the re-zoning, there is nothing to grandfather into the new zoning classification. Accordingly, the City was within its rights to deny the Plaintiffs' application for a beer permit.

**Conclusion**

---

[6] The time limitation of 100 days was a specific provision of the local Chattanooga ordinance and has no application in the present case.

For the foregoing reasons, the decision of the trial court which upheld the Defendant's denial of a beer permit is affirmed. Costs of this appeal are taxed to the Appellants, Willie Toles and Ida Mae Toles, for which execution may issue if necessary.