IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 5, 2004 Session

## CUSTOM LAND DEVELOPMENT, INC.  v. TOWN OF COOPERTOWN and COOPERTOWN BOARD OF ZONING APPEALS

**An Appeal from the Chancery Court for Robertson County**
**No. 17206     Ross H. Hicks, Judge**

_____

**No. M2003-02107-COA-R3-CV - Filed December 22, 2004**

_____

This is a zoning case.  The appellant landowner owns a tract of land that it sought to resume using as a sanitary landfill.  The appellees are the newly-incorporated town in which the landfill is located and the town's zoning board.  In 1996, the landowner and the county in which the town and landfill are located resolved a dispute in which the landfill was deemed a legally permitted nonconforming use under the county zoning ordinance.  In 2002, the landowner sought a building permit from the town planning commission.  The town planning commission refused to grant the permit until the landowner obtained a determination from the town zoning board that the landfill was a legally permitted non-conforming use under the town's newly-enacted zoning ordinances.  The town zoning board determined that the landfill was not a legally permitted nonconforming use under the town zoning ordinances because the landowner had discontinued its nonconforming use of the landfill for longer than one year.  Consequently, no permit was issued.  The landowner unsuccessfully appealed the ruling to the town zoning appeals board.  The landowner then appealed the decision of the zoning appeals board to the trial court.  The trial court affirmed the ruling of the zoning appeals board.  We affirm, finding that the use of the property as a landfill had been discontinued for more than one year and thus the landfill did not fall within  the nonconforming use exception to the town's zoning ordinance.

### Rule 3 Appeal; Judgment of the Chancery Court is affirmed

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which W. FRANK CRAWFORD, P.J., W.S. and ALAN E. HIGHERS, J., joined.

James L. Murphy and Austin L. McMullen, Nashville, for the appellant Custom Land Development, Inc.

George A. Dean, Nashville, for appellees Town of Coopertown and Coopertown Board of Zoning Appeals.

**OPINION**

Plaintiff/Appellant Custom Land Development, Inc. ("Custom") owns a tract of land located in Robertson County known as the Highlands Landfill ("Highlands"). Custom acquired the property in 1985 and later leased it to Browning-Ferris Industries, Inc. ("BFI") to develop and operate a landfill. BFI accepted waste at the landfill on September 6, 1988. On that same day, Robertson County filed suit to enjoin the operation, claiming that the landfill violated the Robertson County zoning ordinances.

A legal battle relating to validity of the county zoning ordinance ensued, resulting in an appeal to this Court. On appeal, this Court remanded Custom's claim to the Robertson County Circuit Court. ***Robertson County, Tennessee v. Browning-Ferris Indust. of Tennessee, Inc.***, 799 S.W.2d 662 (Tenn. Ct. App. 1990). During this time, BFI terminated the Highlands lease. Custom then reacquired the applicable permits and proceeded with development of the property as a landfill. After remand of the case, Robertson County and Custom entered into a settlement agreement that dissolved the injunction against Highlands. The agreement stipulated that the Highlands landfill was a legally permitted nonconforming use[1] of the property under the Robertson County zoning

_____

[1] A legally permitting nonconforming use is protected under T.C.A. § 13-7-208, which provides:

(b)(1) In the event that a zoning change occurs in any land area where such land area was not previously covered by any zoning restrictions of any governmental agency of this state or its political subdivisions, or where such land is covered by zoning restrictions of a governmental agency of this state or its political subdivisions, and such zoning restrictions differ from zoning restrictions imposed after the zoning change, then any industrial, commercial or business establishment in operation, permitted to operate under zoning regulations or exceptions thereto prior to the zoning change shall be allowed to continue in operation and be permitted; provided, that no change in the use of the land is undertaken by such industry or business.

(2) When the use permitted to continue to expand, or to be rebuilt pursuant to any subsection of this section is an off-premises sign, such use shall not preclude any new or additional conforming use or structure on the property on which the sign structure is located or on any adjacent property under the same ownership; provided, however, that any such new or additional use or structure does not result in any violations of the applicable zoning restrictions other than those nonconformities associated with the off-premises sign as allowed under this subdivision (b)(2).

(c) Industrial, commercial or other business establishments in operation and permitted to operate under zoning regulations or exceptions thereto in effect immediately preceding a change in zoning shall be allowed to expand operations and construct additional facilities which involve an actual continuance and expansion of the activities of the industry or business which were permitted and being conducted prior to the change in zoning; provided, that there is a reasonable amount of space for such expansion on the property owned by such industry or business situated within the area which is affected by the change in zoning, so as to avoid nuisances to adjoining landowners. No building permit or like permission for construction or landscaping shall be denied to an industry or business seeking to expand and continue activities conducted by that industry or business which were permitted prior to the change in zoning; provided, that there is a reasonable amount of space for such

ordinances and that the nonconforming use had not been discontinued through the date of the order, since the injunction had prevented the operation of the landfill. Under this exception, even though the landfill did not conform to the County zoning ordinances, Custom would nonetheless be permitted by the County to operate the landfill. The settlement agreement between Custom and Robertson County was approved by the Robertson County Circuit Court on August 22, 1996.

After dissolution of the injunction, Custom sought out a new waste collection company to operate the landfill. There were substantial obstacles. Due to the specialized nature of the waste disposal industry, clients with the means and ability to operate a profitable landfill were not readily available. In addition, during the lengthy period of time in which the injunction had been in force, environmental guidelines governing landfills became more stringent. The Tennessee Department of Environment and Conservation required Highlands to comply with the new guidelines before resuming operation of the landfill. Compliance with these new guidelines required Custom to modify the design of the landfill and add impermeable liners to prevent adverse effects on the surrounding environment.

On December 1, 1996, approximately three and a half months after dissolution of the injunction against Highlands, the owners of the property surrounding the landfill incorporated the Defendant/Appellee town of Coopertown. The Highlands property is located within the boundaries of Coopertown. Shortly thereafter, Coopertown adopted a zoning ordinance that became effective on January 30, 1997.

The Coopertown zoning ordinance required Highlands to obtain site approval for the modified design. Coopertown authorized the Robertson County Planning Commission ("Planning Commission") to perform a site review on its behalf. The County Planning Commission granted site approval to Highlands on September 4, 1997.

During this time, Custom had been looking for a client to operate the landfill. In early 1998, Custom entered into a tentative agreement with Republic Industries, Inc. to operate the landfill. From March through May 1998, landfill-related construction began at Highlands. It included an access road, a siltation pond, and the first waste cell. In June 1998, however, Republic Industries, Inc. withdrew from the Highlands project. Custom was forced to resume the search for a waste services company capable of operating the landfill.

Finally, Custom located another company to operate the landfill. On August 31, 2001, Custom entered into an agreement with Waste Industries, Inc. ("Waste Industries") to operate the landfill. In order to utilize new technology and further protect the local environment, Waste Industries asked Custom to make additional modifications to the site.

_____

expansion on the property owned by such industry or business situated within the area which is affected by the change in zoning, so as to avoid nuisances the adjoining landowners.

T.C.A. § 13-7-208(b) and (c) (2004).

In May 2002, Coopertown created the Coopertown Municipal Planning Commission ("Coopertown Planning Commission"). On July 23, 2002, Custom submitted to the Coopertown Planning Commission a site approval plan and a request for a building permit to build a trailer office and scales. In its meeting held on September 17, 2002, the Coopertown Planning Commission decided to postpone its review of Custom's site plan until Custom received a final zoning determination from the Coopertown Building Commissioner ("Building Commissioner") on whether Highlands was a legally permitted nonconforming use of the property under the Coopertown Zoning ordinance.

As with the exception to the County zoning ordinance, the "legally permitted non-conforming use" determination was an exception to the Coopertown zoning ordinances. On September 23, 2002, the Building Commissioner determined that Highlands was not a legally permitted nonconforming use of the property because Custom had discontinued operation of the landfill for over one year. Under section 6.021(I) of the Coopertown Zoning Ordinances, when a nonconforming use of land is discontinued for a period of one year, the legally permitted nonconforming use is terminated. Section 6.021(I) of the Coopertown Zoning Ordinance reads:

> I. <u>Discontinuance</u>
> When a nonconforming use of land or the active operation of substantially all the nonconforming uses in any building or other structure or tract of land is discontinued for a period on one (1) year, then the land or building or other structure shall thereafter be used only for conforming use. Intent to resume active operations shall not affect the foregoing provision.

Thus, if Custom's use of the property did not meet the requirements for a legally permitted nonconforming use, this meant that Custom could only use the property for a conforming use. Since the Coopertown zoning ordinances did not permit operation of a landfill in that location, Custom would be precluded from using its property for its intended purposes, a landfill.

Custom appealed the decision of the Building Commissioner to the Defendant/Appellee Coopertown Board of Zoning Appeals. The Coopertown Board of Zoning Appeals affirmed the ruling of the Building Commissioner and made the following findings:

> (i) when the Zoning Ordinance was adopted on January 30, 1997, the Property was zoned agricultural and a landfill was not permitted as either permitted or conditional use; (ii) although a court order entered on August 22, 1996 provided that the landfill had been deemed legally non-conforming under Robertson County's zoning regulations and that the use had not been discontinued because of the injunction issued in the case, the court did not rule that the use was in operation at the time of the order or at the time of the issuance of the injunction; (iii) although the owners have submitted permit applications and received site plan approval, the landfill has never been operational since the adoption of the Zoning Ordinance; (iv) even though some construction activities were conducted either before April of 1998, or at the

latest, through the end of June 1998, the landfill was never in operation despite those activities; (v) those construction activities were not substantial and thus insufficient to vest a right to continue the use of the Property as a landfill; (vi) those construction activities ended in April, 1998 or at the latest in June of 1998, and thus any use established as the result of those activities has been discontinued for over one year; (vii) the construction activities were not completed and the landfill never opened; (viii) no evidence was presented that waste materials have ever been deposited at the site; (ix) no evidence was presented that any landfill activities as opposed to construction activities were conducted on the Property; (x) no evidence was presented that any landfill activities were conducted on the Property since the adoption of the Zoning Ordinance; (xi) no evidence was presented of any meaningful activities conducted on the Property since 1998; (xii) while the owner has maintained the necessary permits, any landfill use has been discontinued for well over one year; and (xiii) since the landfill use has been discontinued for well over one year, Section 6.021(I) of the Zoning Ordinance prohibits the re-establishment of the landfill use on the Property.

The Coopertown Board of Zoning Appeals, then, concluded that Custom's numerous activities in preparation to operate the landfill did not constitute the "active operation" of a landfill on the property, and that "active operation" of the landfill had been discontinued for over a year. Therefore, under Section 6.021(I) of the Coopertown zoning ordinances, Custom would not be permitted to operate a landfill on its property. Custom then filed a Petition for Writ of Certiorari to the Robertson County Chancery Court ("Chancery Court") to appeal the decision of the Board of Zoning Appeals.[2]

The Chancery Court held a hearing on Custom's petition, based on the record of the Coopertown Board of Zoning appeals. It admitted no additional evidence but heard arguments of counsel. On July 7, 2003, after considering the record and the parties' arguments, the Chancery Court issued a complete and cogent Memorandum Opinion.

At the outset of the Memorandum Opinion, the Chancery Court outlined the pertinent facts. It acknowledged the narrow scope of its review of the Board's decision, limited to a determination of whether the Board exceeded its jurisdiction or acted illegally, arbitrarily or fraudulently. It noted that its task was not to substitute its judgment for that of the Board, but rather to uphold the Board's decision if there was any rational basis for it.

Cognizant of this standard of review, the Chancery Court stated that "central issue in this case is the determination of whether or not the Coopertown Board of Zoning Appeals, acting on behalf

---

[2] Under the common law writ of certiorari:

The writ of certiorari may be granted whenever authorized by law, and also in cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy or adequate remedy.

T.C.A.§ 27-8-101 (Supp. 1997).

of the City of Coopertown, exceeded its jurisdiction or has acted illegally, arbitrarily, or fraudulently." The Chancery Court listed three questions as determinative of the issue. The questions were:

> 1. What was the effect of the August 22, 1996, Robertson County Circuit Court Order of Compromise and Settlement?
> 2. Is the provision of Coopertown's Zoning Ordinance providing for loss of a nonconforming use if that use is discontinued for a period of one year valid? and
> 3. Assuming validity of the ordinance, is Custom's period of non-use involuntary so as to estop enforcement of the ordinance against it?

On the issue of the effect of the August 1996 settlement agreement between Custom and Robertson County, the Chancery Court rejected Coopertown's argument that it was not bound by the settlement agreement. The Chancery Court found that Coopertown was bound by the settlement agreement, and specifically was bound by the determination in the agreement that Highlands was a nonconforming use under Tennessee Code Annotated § 13-7-208.

In its Memorandum Opinion, the Chancery Court stated that Tennessee statutes do not specifically authorize or preclude discontinuation provisions in municipal zoning ordinances.[3] The Chancery Court noted, however, that such provisions were recognized in dicta in **Rives v. City of Clarksville**, 618 S.W.2d 502 (Tenn. Ct. App. 1981), in which this Court stated:

> It should also be remembered that retrospective zoning is only one of several possible methods of attempting to eliminate non-conforming uses. There are other methods which include condemnation through the power of eminent domain invoking the law of nuisance, *forbidding a resumption of use after a specified period of non-use*, and prohibiting or limiting extensions or repairs to property.

**Rives v. City of Clarksville**, 618 S.W.2d at 510 (emphasis added). The Chancery Court interpreted this dicta as suggesting that a discontinuation clause was an appropriate method of controlling nonconforming uses of land, and found from this that the Coopertown Board of Zoning Appeals had a rational basis for its enforcement of the zoning ordinance.

Finally, the Chancery Court considered Custom's argument that any discontinuation of its use of the property as a landfill was involuntary, stemming from the original injunction, and that this would estop Coopertown from enforcing the discontinuation ordinance. The Petition for Writ of Certiorari chronicled Custom's numerous actions regarding development of Highlands, such as the search for new clients, actions to comply with new environmental regulations, and preparation of the land. The Chancery Court concluded, however, that although some construction activities took place as late as 1998, Highlands had never been operational as a landfill since Coopertown adopted the zoning ordinance. Custom presented no evidence of any activity whatsoever on the site from June

---

[3]Since that date, the Tennessee Code has been amended to include a 30 month discontinuation clause. T.C.A. § 13-7-208(g) (2004).

of 1998 through August 31, 2001, the date of the agreement with Waste Industries. It did not apply for a building permit until July 23, 2002. The Chancery Court found that this period of inactivity provided a rational basis for Coopertown's decision.

Therefore, the Chancery Court concluded that Custom failed to bear the burden of proving that the Board of Zoning Appeals exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently. Further, it found substantial and material evidence to support the Board's decision, and affirmed the refusal to issue Custom a building permit. From this decision, Custom now appeals.

On appeal, Custom argues that the Chancery Court erred in affirming the Board's decision because Coopertown had no authority to act in a manner inconsistent with the standard for abandonment of a property right. Custom argues as well that Coopertown cannot base its decision on Custom's nonuse of the property as a landfill, because any such nonuse was involuntary. Finally, Custom maintains that it had a vested right to develop the landfill.

The standard of review governing the common law writ of certiorari is well-established. "The common law writ of certiorari provides the procedural vehicle for reviewing the decisions by local zoning boards. This writ affords quite limited judicial review." *Lafferty v. City of Winchester*, 46 S.W.3d 752, 758–759 (Tenn. Ct. App. 2000) (citing *421 Corp. v. Metropolitan Gov't of Nashville*, 2000 WL 488137). "In recognition of the policy that favors permitting the community decision-makers closest to the events to make the decision, the courts refrain from substituting their judgments for the broad discretionary power of the local government body." *Id*. at 758.

This standard of review reflects the Court's deference to the decision of the zoning board. "If there is a rational or justifiable basis for the enactment and it does not violate any state statute or positive constitutional guaranty, the wisdom of the zoning regulation is a matter exclusively for legislative determination." *Fallin v. Knox County Board of Commissioners*, 656 S.W.2d 338, 342–343 (Tenn.1983). A reviewing court may overturn the decision of an administrative agency such as a zoning board only when the agency has acted unlawfully, arbitrarily, fraudulently, or without material evidence. *Lafferty*, 46 S.W.3d at 759. The intrinsic correctness of a zoning board's decision is not subject to review under the writ of certiorari. *Arnold v. Tennessee Bd. of Paroles*, 956 S.W.2d 478, 480 (Tenn. 1997). Both the Chancery Court and this Court are bound by the same standard of review. *See Lafferty*, 46 S.W.3d at 758-759.

On appeal, Custom acknowledges that the General Assembly in T.C.A. § 13-7-208 granted municipalities the power to regulate land use within their boundaries; however, it notes that a municipality's exercise of this regulatory power must not conflict with state law. *421 Corp. v. Metropolitan Government of Nashville and Davidson County*, 36 S.W.3d 469, 476 (Tenn. Ct. App. 2000). Custom asserts that a nonconforming use such as Highlands is allowed to continue operations under § 13-7-208 and that the discontinuation provision in the Coopertown zoning ordinance contravenes this statute. Custom also argues that the Chancery Court erred in relying on dicta in *Rives* as noted above and ignored the decision of this Court in *National Auto/Truck Stops, Inc. v.*

*Williamson County*, M2000-02456-COA-R3-CV, 2001 Tenn. App. Lexis 300 at \*3 (Tenn. Ct. App. Apr. 30, 2001).

In *National Auto/Truck Stops*, the plaintiff owned an auto/truck stop with a large sign outside that advertised the business. A later adopted zoning ordinance rendered the signs legally nonconforming. *Id*. at \*2. The zoning ordinance also included an amortization clause that required the removal of all nonconforming signs by a specified date. *Id*. The plaintiff did not remove the signs and later applied for a permit to replace the existing signs because they had deteriorated. The defendant county denied the permit, and the truck stop filed suit. *Id*. The trial court upheld the county's refusal to grant the permit, holding that T.C.A. § 13-7-208 protected businesses, not signs. *Id*. at \*1. The truck stop appealed. This Court reversed, finding that the signs were necessary to the continued conduct of the truck stop's business, terming it an "accessory use" of the business establishment. It found that this "accessory use" was also subject to the protections of section 13-7-208, including the language of section 13-7-208(d), which provides that "[n]o building permit . . . shall be denied to an industry or business seeking to destroy and reconstruct facilities necessary to the continued conduct of the activities of that industry or business." *Id*. at \*4. Just as the principal business facilities could be destroyed and reconstructed, the appellate court held that the "facilities" for the "accessory use," *i.e.* the sign, could be destroyed and reconstructed as well. *Id.*

Custom's argument, however, misses the point. It is undisputed that Section 13-7-208, essentially a "grandfather clause,"[4] envisions that a nonconforming business may need to discontinue operations for a period of time, specifically authorizing such nonconforming business to "destroy [its] present facilities and reconstruct new facilities. . . ." T.C.A. § 13-7-208(d). Once the nonconforming use has been discontinued, however, the issue becomes, how long the property owner has to resume the nonconforming use in order to retain its protected status under Section 13-7-208. At the time Custom requested the subject permit, there was no discontinuance provision in the statute. In light of this, Custom's position, apparently, is that the period of discontinuance can last indefinitely, so long as the property owner is trying really hard to resume operation. This is clearly untenable.

---

[4]A grandfather clause is defined as "[a] statutory or regulatory clause that exempts a class of persons or transactions because of circumstances existing before the new rule or regulation takes effect." *Black's Law Dictionary* 706 (7th ed. 1999). A good explanation of the reasons for such a "grandfather clause" is included in this Court's opinion in *Lafferty v. Winchester*:

> Rarely, if ever, have local governments enacted zoning ordinances on a completely clean slate. Property is usually already in use when it is first zoned, and so it is inevitable that ideal zoning theory will clash with the existing use of particular pieces of property. In order to avoid the legal problems that would attend a local government's efforts to force a private property owner to discontinue an otherwise permissible use of property, Tenn. Code Ann. § 13-7-208(b) (1999) requires local governments to permit certain types of pre-existing nonconforming uses to continue even if they are inconsistent with the zoning classification of the surrounding property.

*Lafferty*, 46 S.W.3d 752, 758 (Tenn. Ct. App. 2000).

Here, Coopertown enacted its own discontinuance ordinance, stating that a nonconforming use that is discontinued for longer than one year will not be protected by the "grandfather clause." Coopertown Zoning Ordinance Section 6.021(I). Custom argued to the Chancery Court that Coopertown's discontinuance ordinance directly conflicted with T.C.A. § 13-7-208 and was therefore unauthorized. The Chancery Court rejected this argument, finding that, "the placing of an objective time limit on non-conforming uses which are not operational is imminently reasonable and does not conflict with the state statutory scheme." We agree. As noted by the Chancery Court, such a discontinuance ordinance was specifically mentioned by this Court in *Rives v. City of Clarksville*, 618 S.W.2d 502, 510 (Tenn. Ct. App. 1981). Moreover, the Chancery Court's holding is confirmed by the Legislature's later amendment of Section 13-7-208 to include a statewide discontinuance provision. *See* T.C.A. § 13-7-208(g) (2004).[5]

Custom further asserts that the discontinuation ordinance should not be applicable because its discontinuation of the property's use as a landfill was "involuntary." It maintains that the phrase "in operation" in Section 13-7-208 should be construed to include a nonconforming business that is not in operation on the date of the zoning change, if the lack of active operation is involuntary. Custom advocates a standard under which the owner of a nonconforming business cannot be deprived of his right to engage in the nonconforming use of his property unless he demonstrates an intent to abandon the nonconforming use, citing the common law principle that an interest in property is not considered abandoned unless there is proof of intent to abandon and an overt act evidencing the intent to abandon. *State ex rel. Phillips v. Smith*, 241 S.W.2d 844 (Tenn. Ct. App. 1950); *Phy v. Hatfield*, 126 S.W. 105 (Tenn. 1909); *Boyd v. Hunt*, 52 S.W. 131 (Tenn. 1899).

In support of its argument, Custom cites *Boles v. City of Chattanooga*, 892 S.W.2d 416 (Tenn. Ct. App. 1994), involving a City of Chattanooga discontinuance ordinance with a time limit of 100 days. In *Boles*, the plaintiff operated an adult bookstore for several years before a local zoning ordinance rendered the use nonconforming. *Id*. at 418. The bookstore continued to operate, however, as a pre-existing nonconforming use under the "grandfather" provision of the ordinance. *Id*. Ten years after the zoning ordinance became effective, the local attorney general filed criminal charges against the bookstore, claiming that the bookstore was a public nuisance. *Id*. The criminal court issued a temporary injunction against the bookstore, requiring the immediate closure of the business. *Id*. The injunction was later made permanent. *Id*. at 418-419. The owners of the bookstore then appealed the permanent injunction on constitutional grounds, asserting that it was overbroad. *Id*. at 419.

While the appeal was pending, the owner of the bookstore leased the premises to a tenant for the operation of an adult bookstore. *Id*. at 420. The new bookstore was refused a permit on the grounds that the nonconforming use was no longer protected because the property owners had

---

[5]It adopts a thirty-month limit on cessation of operation, more generous than Coopertown's ordinance. However, even if the new statutory discontinuance provision were applicable, which it is not, Custom would not prevail. Coopertown's zoning ordinance became effective on January 30, 1997, and Custom applied for the subject permit on July 23, 2002.

discontinued that use for more than 100 consecutive days, thereby invoking the discontinuation clause of the zoning ordinance. *Id.*

The bookstore owner asserted that the discontinuation clause in the ordinance was not applicable because the discontinuation of the bookstore was involuntary. *Id*. In discussing the intent aspect of discontinued nonconforming use, the ***Boles*** court stated:

> We believe that the term "discontinued" or words of similar import, as utilized in zoning ordinances with specific time limitations, should be construed to include an element of intent, combined with some act – or failure to act – indicative of abandonment. . . . To hold that a non-conforming use can be cut off automatically by time limits on discontinuance, regardless of the reason for that discontinuance, strikes us as intrinsically unfair. . . . Accordingly, we hold that the term "discontinued" as found in [Chattanooga's discontinuance ordinance] does not apply if the discontinuance of the non-conforming use is purely involuntary in nature.

*Id.* at 422. Thus, the court in ***Boles*** held that the cessation of operation of the adult bookstore could not be considered a "discontinuance" of the nonconforming use because it was "purely involuntary in nature," that is, the property owner was legally prevented from using the property for that purpose by the injunction. Within 100 days after the injunction was lifted, the nonconforming use resumed *Id.* at 420. The ***Boles*** opinion included language suggesting that the word "discontinued" should be read to require an intent and an act (or failure to act) indicating abandonment. *Id.* at 422.

Custom, of course, emphasizes the dicta in ***Boles*** opining that intent to abandon should be read into the term "discontinued." The holding, however, was simply that a discontinuance that is "purely involuntary in nature," as where the nonconforming use is prohibited by an injunction during the specified time period, cannot be considered a "discontinuance" under the ordinance. This is clearly distinguishable from the instant case, in which the injunction was lifted in August 1996, the ordinance became effective in January 1997, and Custom did not apply for the subject permit until July 2002.

The facts in the instant case are more comparable to ***Toles v. City of Dyersburg***, 39 S.W.3d 138 (Tenn. Ct. App. 2000) *(perm. to app.)*, relied upon by the Chancery Court below. In ***Toles***, the plaintiff ("Toles") owned a tavern located in the city of Dyersburg. *Id.* at 139. The tavern had been operated by a tenant who allowed the business license and liquor license to expire. *Id.* After this tenant left, Toles began making improvements to the property and sought out a new tenant to operate the tavern. Repairs were required by the city fire department before the permit could be issued, and numerous re-inspections were conducted before the property was deemed in compliance with applicable codes. *Id.* During the five-month period in which Toles repaired the property and sought out a new tenant, the property was re-zoned as residential, causing the tavern to become a nonconforming use. *Id*. at 139-140. Toles finally found a new tenant and applied for a beer permit. *Id.* The city zoning commission denied Toles the permit, determining that the property could not

be "grandfathered" as a nonconforming prior use because the business was not in operation when the property was re-zoned. *Id.* at 140. The property owner appealed.

On appeal, the property owner cited *Boles*, arguing that his repair work and application for permits showed sufficient intent to continue operation of the tavern to allow the property to be "grandfathered" under the new zoning ordinance. *Id.* The appellate court distinguished *Boles*, noting that the nonconforming use was not prevented by an injunction. Rather, it found, there was "no extrinsic force which prevented the club from continuing its operations." *Id*. at 141. It noted that finding someone to operate the tavern "apparently took time," and the fact that numerous repairs were required to conform to applicable codes was not the fault of the city. *Id.* It found both delays to be within the control of the property owner. *Id.*

The *Toles* court read *Boles* as indicating that "intent" is only relevant "where some force outside the control of the property owner prevents the continued use of the land in a particular manner." *Id.* Since no force outside the control of the property owner prevented him from operating the tavern, the intent of the property owner was "not important." *Id.* Therefore, the *Toles* Court found that since no business existed at the time of the zoning change, there was no business to "grandfather" in under the new zoning ordinance. *Id.* As a result, the Court upheld the denial of the beer permit. *Id.*

Custom likens its situation to *Boles*, arguing that its lengthy period of non-use *stemmed* from the original injunction; it caused Custom to lose its original operator of the landfill and caused Custom to have to comply with more stringent environmental regulations. We must conclude, though, that the facts in this case are more like *Toles* than *Boles*. Indeed, Custom's actions can fairly be characterized as "preparation" for use of the property, which has been found not to constitute a pre-existing nonconforming use. *See Dickson County v. Jennette*, 2000 WL 1121550 at \*7 (Tenn. Ct. App. Aug. 9, 2000) ("'[m]ere preparation for use of property . . . is not enough to show a devotion of the property to that use' in order to show a pre-existing nonconforming use.") (quoting *City of Pharr v. Pena*, 853 S.W.2d 56, 64 (Tex. App.1993)).

The evidence in the record shows clearly that development of a landfill is a complex and time-consuming undertaking. Even so, the "grandfather" provision of T.C.A. §13-7-208 was designed to protect ongoing business operations, not to extend the time allowed to develop a nonconforming business. The statute contains no exception for a complex business such as a landfill. Consequently, we must conclude that the Chancery Court did not err in holding that the "grandfather" provision of T.C.A. § 13-7-208 does not protect the use of the Highlands property as a landfill.

Finally, Custom asserts that it obtained a vested right to develop Highlands based on the $400,000 spent on construction of Highlands in 1998. Custom cites *State ex rel. SCA Chemical Waste Services*, *Inc, v. Konigsberg*, 636 S.W.2d 430 (Tenn. 1982), and *Howe Realty Co. v. City of Nashville*, 141 S.W.2d 904 (Tenn. 1940), in support of its argument that rights under an existing ordinance may vest if substantial construction or substantial liabilities are incurred related to the

construction. In both ***Konisberg*** and ***Howe***, however, the plaintiff's estoppel argument was rejected because no construction had begun under the existing ordinance.

The more recent case of ***Rutherford v. Murray***, 2004 WL 1870066 (Tenn. Ct. App. Aug. 20, 2004) provides more guidance on this issue. In ***Rutherford***, the plaintiff zoning board sued the defendant ("Murray") for operating an auto repair shop in violation of the zoning ordinance. ***Id.*** at *1. The trial court determined that the auto repair shop was a valid nonconforming use because Murray had completed a substantial portion of the construction of the shop *before* the new zoning ordinance took effect, and was therefore protected under the "grandfather" clause of T.C.A. § 13-7-208. ***Id.*** at *6, *8. Substantial construction, then, resulted in a vested right when the construction occurred immediately prior to the zoning change.

In this case, however, the $400,000 in construction costs were incurred by Custom long after the Coopertown ordinance became effective and some months after the one-year discontinuation clause disallowed the nonconforming use. A timeline of undisputed facts is helpful to this analysis:

**August 22, 1996** – Order of Compromise and Settlement entered between the Robertson County Commission and Custom designated Highlands as a legally-permitted nonconforming use.

**December 1, 1996** – Local property owners incorporate the town of Coopertown, which includes the Highlands property.

**January 30, 1997** – Coopertown zoning ordinance becomes effective. The Coopertown ordinance provided that the Robertson County Planning Commission would perform site plan approval on behalf of Coopertown. (Coopertown Zoning ordinance p. 122)

**August 21, 1997** – Custom obtained business license for Highlands from Robertson County.

**September 4, 1997** – Robertson County Planning Commission approved Custom's site plan.

**March – June, 1998** – Approximately $400,000 spent on construction of Highlands.

**August 31, 2001** – Custom signs agreement with Waste Industries to operate the landfill. Waste Industries requested modifications to the landfill.

**March 5, 2002** – Tennessee Department of Ecology and Conservation approved modifications requested by Waste Industries.

**July 23, 2002** – Custom submitted building permit for trailer office and scales to Coopertown Planning Commission.

**September 17, 2002** – Coopertown Planning Commission determined that it would not review the modified site plan until Custom obtained a final zoning determination.

**September 23, 2002** – Coopertown Building Commissioner determined that the landfill was not a legally permitted nonconforming use on the grounds that the property had not been used as a landfill for over one year.

**October 8, 2002** – Coopertown Board of Zoning Appeals conducted a public hearing on the issue and upheld the decision of the Coopertown Building Commissioner

The facts shown above are undisputed by the parties. The Coopertown zoning ordinance and the discontinuation provision went into effect on January 30, 1997. Custom was aware that there had been no actual operation of the landfill since 1997. Despite this, Custom chose to begin construction sometime in May of 1998. Unlike *Rutherford*, the Coopertown zoning ordinances remained the same both before and after Custom incurred the construction costs. As such, we must conclude that *Rutherford* is not applicable.

Custom argues that it incurred the construction costs based on the representations of the Robertson County Planning Commission, acting as agents for Coopertown. However, the business license was granted by Robertson County in August 1997 and the site plan was approved by the planning commission in September 1997, both prior to the effective date of the one-year discontinuation ordinance. We must conclude that the mere granting of site plan approval and issuance of a business license by the County does not grant a vested property right to Highlands. For all of these reasons, we find that the Chancery Court did not err in affirming the ruling of the Coopertown Board of Zoning Appeals.

Therefore, the decision of the trial court is affirmed. Costs of this appeal are assessed against Appellant Custom Land Development, Inc., for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE